## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | |
|---|---|
| Dawn Nastali, individually and on behalf of all others similarly situated, | 3:22-cv-50212 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Dollar General Corporation, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. Dollar General Corporation ("Defendant") manufactures, labels, markets, and sells Fudge Mint Cookies under the Clover Valley brand ("Product").



**I.  FUDGE DEFINED**

2. Fudge "is a type of sugar candy that is made by mixing sugar, butter and milk."[1]

3. Though fudge can have any flavor, milkfat is the central component.

4. An 1893 recipe for fudge called for "Four cups granulated sugar; one cup cream; one cup water; one-half cake chocolate; one-half Cup butter."[2]

5. In 1896, The Los Angeles Times published the original fudge recipe by the Vassar students credited with first making fudge: "Two cups of sugar, one cup of milk, a piece of butter one-half the size of an egg" and added flavoring.[3]

6. A 1902 fudge recipe from Mrs. Rorer's New Cook Book includes:[4]

   4 ounces of chocolate
   2 cups of sugar
   1 teaspoonful of vanilla
   1/2 cup of milk
   1 rounding tablespoonful of butter

7. The Oxford Companion to Sugar and Sweets notes that:

   Traditionally, fudge is made by gently boiling granulated sugar and milk to the soft-ball stage (234° to 240°F/ 112° to 115°C); adding butter; cooling the mixture somewhat (120°F/49°C); then beating until thick, creamy, and less glossy.[5]

8. The treatise, A-Z of Food and Drink, an authoritative treatise, describes fudge as "a sort of soft, somewhat toffee-like sweet made by boiling together sugar, butter, and milk."[6]

9. A leading textbook on confectionary science and technology offers a model commercial formulation for fudge which includes between eight and sixteen percent butter and

---

[1] Wikipedia contributors. "Fudge." *Wikipedia, The Free Encyclopedia*. Wikipedia, The Free Encyclopedia, 5 Jan. 2021.
[2] Mrs. J. Montgomery Smith, of Wisconsin, Alternate Lady Manager.
[3] Los Angeles Times, "'Fudges' Are Vassar Chocolates," May 11, 1896, p.2.
[4] Sarah Tyson Rorer [Arnold and Company: Philadelphia] 1902, p. 629.
[5] Goldstein, Darra, and Sidney Mintz. The Oxford companion to sugar and sweets. Oxford University Press, 2015.
[6] John Ayto, An A-Z of Food and Drink, Oxford University Press, 2002, p. 133.

between twelve and twenty percent sweetened condensed milk.

**10.2 Formulations and Ingredients** 275

**Table 10.1** Typical batch formulations (in %) for caramel, fudge and toffee

|  | Commercial caramel (ungrained) | Caramelized sugar caramel | Fudge | English toffee (American) |
|---|---|---|---|---|
| Water | 15–25 | 0 | 10–15 | 8–10 |
| Sucrose | 10–20 | 55–65 | 30–50 | 45–55 |
| Glucose syrup (42 DE) | 36–46 | 0–5 | 10–20 | 0 |
| Sweetened condensed milk[a] | 20–40 | 0 | 12–20 | 0 |
| Cream | 0 | 25–35 | 0 | 0 |
| Butter[b] (fat) | 5–15 | 6–12 | 8–16 | 40–50 |
| Fondant | 0 | 0 | 3–5 | 0 |
| Chocolate liquor/cocoa powder | 0 | 0 | 0–10 | 0 |
| Salt | 0.2–0.5 | 0.2–0.5 | 0.2–0.5 | 0.3–0.6 |
| Vanilla | 0.1–0.3 | 0.1–0.3 | 0.1–0.3 | 0.1–0.3 |
| Lecithin | 0–0.4 | 0–0.4 | 0–0.4 | 0.25–0.45 |
| Nuts (unroasted) | 0 | 0 | 0–12 | 6–12 |

[a]Other dairy ingredients might include evaporated milk or dried milk powder
[b]Salted butter needed for toffee

10. Dictionaries confirm the definitions held by confectionery experts.

11. Google Dictionary defines fudge as "a soft candy made from sugar, butter, and milk or cream."

12. The Cambridge Dictionary defines fudge as "a soft sweet made from sugar, butter, and milk."[7]

13. Collins Dictionary defines fudge as "a soft brown candy that is made from butter, cream, and sugar."

14. Dictionary.com defines fudge as "a soft candy made of sugar, butter, milk, chocolate, and sometimes nuts."

15. Macmillan Dictionary defines fudge as a "soft brown sweet food made from sugar, butter, and milk or cream."

16. While fudge originated as a solid candy that was consumed by itself, it can take various forms.

---

[7] Cambridge Dictionary, fudge.

3

17. This includes as a liquid such as hot fudge or as a coating to other foods.

18. The difference is based on the form of dairy ingredients used in each application.

19. In hot fudge, butter is typically replaced with heavy cream, resulting in a thick, pourable liquid while hot, becoming more viscous as it cools.

20. In a fudge coating, butter may be replaced with heavy cream or dry butterfat ingredients, and supplemented by whole milk powder.

## II. DAIRY INGREDIENTS ARE ESSENTIAL TO FUDGE

21. The small droplets of milkfat from dairy ingredients are dispersed throughout the fudge mass, providing lubricity, and imparting desirable flavor release.

22. Dairy ingredients impart a creamy, rich taste and texture to fudge, because milkfat contains hundreds of lactones, aroma compounds which contribute to its taste.

23. Milk fat melts at mouth temperature (35 °C/95 °F) and does not contribute to a waxy sensation.

24. Alternatives to milkfat, such as vegetable oils, known as vegetable fats, are sometimes used in place of dairy ingredients to reduce cost and provide a "fudge-like" product.

25. In contrast to dairy ingredients, vegetable oils do not melt at mouth temperature and leave a waxy mouthfeel.

## III. FUDGE REPRESENTATIONS ARE MISLEADING

26. Though the Product is identified as "Fudge Mint Cookies," it substitutes lower quality and lower-priced "Vegetable Oil Shortening (Palm and Palm Kernel Oils)" for dairy ingredients, shown in the ingredient list.

**INGREDIENTS:** ENRICHED WHEAT FLOUR (FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), SUGAR, VEGETABLE OIL SHORTENING (PALM AND PALM KERNEL OILS), HIGH FRUCTOSE CORN SYRUP, COCOA (PROCESSED WITH ALKALI), CORNSTARCH, SALT, LEAVENING (BAKING SODA, AMMONIUM BICARBONATE), SOY LECITHIN, NATURAL AND ARTIFICIAL FLAVOR.

27. The ingredients do not disclose any dairy ingredients.

28. The vegetable oil shortening is part of the "fudge" component of the Product because it would not be a part of a regular chocolate mint cookie.

29. Reasonable consumers are misled by the statement "Fudge Mint Cookies" and the picture of the cookies coated with what appears to be fudge, because they expect fudge to contain at least some dairy ingredients.

30. Cookies covered in fudge from dairy ingredients exist in the marketplace, are not a rare or pricy delicacy, and are technologically and economically feasible.

**IV. MINT REPRESENTATIONS ARE MISLEADING**

31. The Product's green packaging, picture of two mint leaves, "Mint," and the lack of

5

any qualifying terms, i.e., "Mint Flavored" or "Artificial Mint Flavored," causes consumers to expect it contains mint ingredients.

32. The representations are misleading because the ingredient list does not identify any mint ingredients.

**INGREDIENTS:** ENRICHED WHEAT FLOUR (FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), SUGAR, VEGETABLE OIL SHORTENING (PALM AND PALM KERNEL OILS), HIGH FRUCTOSE CORN SYRUP, COCOA (PROCESSED WITH ALKALI), CORNSTARCH, SALT, LEAVENING (BAKING SODA, AMMONIUM BICARBONATE), SOY LECITHIN, ==NATURAL AND ARTIFICIAL FLAVOR==.

33. To the extent the Product may taste like mint, this is from "Natural and Artificial Flavor," a synthesized blend of compounds extracted in a laboratory from natural and artificial sources, with no connection to mint ingredients.

34. Illinois has incorporated all federal regulations related to the labeling of foods.

35. The relevant regulations require that the source of a product's characterizing flavor be disclosed, so consumers can make informed choices about what they buy and consume.

6

36. Since the Product's mint flavor is not from mint, but from natural and artificial flavors, it is required to state, "Natural and Artificial Mint Flavored," "Naturally and Artificially Flavored Mint" or "Mint Naturally and Artificially Flavored." 21 C.F.R. § 101.22(i)(1)(i); 21 C.F.R. § 101.22(i)(2).

37. By not disclosing the source of the mint taste, consumers are misled to expect the presence of higher quality mint ingredients instead

## V. CONCLUSION

38. The Product contains other representations which are misleading.

39. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

40. By labeling the Product in this manner, Defendant gained an advantage against other companies, and against consumers seeking to purchase a product that contained fudge and mint ingredients.

41. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

42. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

43. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

44. The Product is sold for a price premium compared to other similar products, no less than approximately $2.00 for 9 oz (255 g), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

45. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

46. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

47. Plaintiff Dawn Nastali is a citizen of Cary, Illinois, McHenry County.

48. Defendant Dollar General Corporation is a Tennessee corporation with a principal place of business in Goodlettsville, Davidson County, Tennessee.

49. Plaintiff and Defendant are citizens of different states.

50. Defendant transacts business within this District through sale of the Product at its hundreds of stores within this State, and dozens within this District, and online, sold directly to residents of this District.

51. Venue is in this District because Plaintiff resides in this District and the actions giving rise to the claims occurred within this District.

52. Venue is in the Western Division in this District because a substantial part of the events or omissions giving rise to the claim occurred in McHenry County, i.e., Plaintiff's purchase of the Product and her awareness of the issues described here.

## Parties

53. Plaintiff Dawn Nastali is a citizen of Cary, McHenry County, Illinois.

54. Defendant Dollar General Corporation is a Tennessee corporation with a principal place of business in Goodlettsville, Tennessee, Davidson County.

55. Defendant's registered agent in its state of incorporation is Corporation Service Company, 2908 Poston Ave Nashville TN 37203.

56. Defendant's registered agent in its state of principal place of business is Corporation Service Company, 2908 Poston Ave Nashville TN 37203.

57. Dollar General is an American retail corporation that operates a chain of over 18,000 stores throughout the nation, selling everything from outdoor furniture to groceries.

58. It was founded in 1939 with the mission of "Serving Others."

59. While Dollar General sells leading national brands, it also sells a large number of products under one of its private label brands, Clover Valley.

60. Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

61. Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

62. Products under the Clover Valley brand have an industry-wide reputation for quality and value.

63. In releasing products under the Clover Valley brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

64. Defendant is able to get national brands to produce its private label items due its loyal customer base and tough negotiating.

65. Private label products generate higher profits for retailers because national brands spend significantly more on marketing, contributing to their higher prices.

66. A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

67. Private label products under the Clover Valley brand benefit by their association with

9

consumers' appreciation for the Dollar General brand as a whole.

68. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at Defendant's stores, at locations such as 366 Northwest Hwy, Cary, IL 60013, between April and May 2022, among other times.

69. Plaintiff bought the Product because she expected it contained fudge and mint ingredients because that is what the representations said and implied.

70. Plaintiff relied on the words and images on the Product, on the labeling and/or claims made by Defendant in digital and/or social media.

71. Plaintiff bought the Product at or exceeding the above-referenced price.

72. Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

73. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes and/or lower-priced non-similar products which did not make the statements and claims made by Defendant.

74. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

75. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its abilities and/or composition.

76. Plaintiff is unable to rely on the labeling of not only this Product, but other similar products, because she is unsure of whether their representations are truthful.

Class Allegations

77. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class**: All persons in the States of North Dakota, Texas, West Virginia, Virginia, North Carolina, Kentucky, New Mexico, Oklahoma, Utah, Nebraska, South Carolina, Kansas, and Wyoming, who purchased the Product during the statutes of limitations for each cause of action alleged.

78. Common questions of law or fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

79. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

80. Plaintiff is an adequate representative because her interests do not conflict with other members.

81. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

82. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

83. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

84. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act<br>
("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

85. Plaintiff incorporates by reference all preceding paragraphs.

86. Plaintiff and class members desired to purchase a product that contained fudge and mint ingredients.

87. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

88. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

89. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

90. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

91. Plaintiff relied on the representations that the Product contained fudge and mint ingredients

92. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

93. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the above-referenced consumer protection statute and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

94. Plaintiff reserves the right to assert the consumer protection statute of this State on behalf of the Consumer Fraud Multi-State Class.

95. Defendant intended that Plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

96. As a result of Defendant's use or employment of artifice, unfair or deceptive acts or business practices, Plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages.

97. Defendant's conduct showed motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

98. The Product was manufactured, identified, marketed and sold by Defendant and expressly and impliedly warranted to Plaintiff that it contained fudge and mint ingredients.

99. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

100. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires

101. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it contained fudge and mint ingredients.

102. Defendant's representations affirmed and promised that the Product contained fudge and mint ingredients.

103. Defendant described the Product so Plaintiff believed it contained fudge and mint ingredients.

104. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

105. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company known for decades as providing quality goods at fair prices, and the custodian of the Clover Valley brand.

106. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

107. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

108. Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

109. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

110. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

111. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it contained fudge and mint ingredients.

112. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it contained

fudge and mint ingredients, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

113. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Negligent Misrepresentation

114. Defendant had a duty to truthfully represent the Product, which it breached.

115. This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company, and the custodian of the Clover Valley brand.

116. Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

117. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

118. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

119. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

120. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

121. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained fudge and mint ingredients.

122. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

123. Defendant knew of the issues described here yet did not address them.

124. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

125. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: June 19, 2022

                                                  Respectfully submitted,

                                                  /s/Spencer Sheehan
                                                  Sheehan & Associates, P.C.
                                                  Spencer Sheehan
                                                  60 Cuttermill Rd Ste 412
                                                  Great Neck NY 11021
                                                  Tel: (516) 268-7080
                                                  spencer@spencersheehan.com